v. Jacob N. Cecil, defendant-appellant, arguing for the appellant Elizabeth Cook, arguing for the appellee Barry W. Jacobs. Good morning, counsel. Sorry for the delay with this new protocol. We have to do some conversation after it all, and we were a bit delayed. So I apologize, but we are now ready. So, Ms. Cook, if you are ready, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, I am Elizabeth Cook of the Office of the State Appellate Defender on behalf of the appellant in this case, Jacob Cecil. Jacob Cecil's pro se petition contends that he received ineffective assistance from both trial and appellate counsels. At the root of this claim is a challenge to the circumstances of his second sentencing hearing, where the transcript from his first sentencing hearing was admitted with no objection from his attorney. That transcript was highly prejudicial, where Cecil's testimony was the product of ineffective assistance by his first attorney. The issue of on August 9, 2017, finding Cecil's 45-year sentence to be not excessive and not an abuse of the trial court's discretion. This court's order relied for that finding on the aggravating evidence that was introduced at Cecil's first sentencing hearing. For example, in paragraph 3 of its order, this court noted the aggravating evidence of Cecil's past work as an enforcer of drug debts, where he used a sawed-off shotgun to obtain payment. This evidence was only introduced through Cecil's cross-examination by the state at his first sentencing hearing and then came back to haunt him at his second sentencing hearing, when that transcript was introduced as aggravating evidence by the state. This court specifically noted the trial court's consideration of that transcript when it handed down its new sentence of 45 years, which was really just the original sentence of 60 years minus the illegal 15-year firearm enhancement. Thus, the question of whether counsel's failure to object to the introduction of this transcript prejudiced Cecil is easily answered. He was prejudiced in the trial court when the court specifically relied on that transcript in fashioning his second sentence and on appeal when this court also relied on the conduct described in that transcript to affirm his sentence. The next part of the ineffective assistance of counsel question is, of course, deficient performance. Trial counsel performed efficiently when she failed to object to the introduction of this highly damaging transcript at Cecil's sentencing hearing, and appellate counsel similarly performed efficiently in failing to challenge it on appeal. This transcript should not have been considered as a sentencing factor simply because Cecil's admissions at the first sentencing hearing were a product of the ineffective assistance of counsel he received at that hearing. At the time that he took the stand to testify, Cecil did not know that he could simply make a statement in allocution rather than being subject to the prosecutor's scathing cross-examination because his attorney had never advised him of such. This claim is unrebutted. Indeed, at the hearing to withdraw Cecil's guilty plea, Attorney Buttrin defended her strategy of having Cecil take the stand and claimed that she was powerless to stop him making these damning admissions. However, the transcript betrays that Attorney Buttrin made only one objection during Cecil's first cross-examination and when she was initially overruled did not pursue the objection. She stood by and passively let him admit to prior bad acts that had not been previously introduced in the record or in his PSI with no further objection. In addition, Attorney Buttrin put Cecil on the stand even knowing his long history of substance abuse, mental health problems, and his learning disabilities and early in the proceedings, Buttrin doubted his capacity enough to request two fitness exams and was aware that he had turned down a favorable 21-year plea deal because, in his words, God had told him to. It was simply irresponsible of Attorney Buttrin not to advise Cecil of his right to make a narrative statement in allocution without being subject to cross-examination and then to fail to object when the prosecutor elicited increasingly damaging testimony from him. This cross-examination never should have happened and because it was the direct result of ineffective assistance of counsel, it should have been suppressed at the subsequent sentencing hearing. The United States Supreme Court case, Harrison v. United States, should inform the outcome of this case. Although the posture of Harrison was different from that at issue in this case, the Supreme Court did not limit its holding to only that fact pattern and the justification for suppression is even stronger in the instant case than it was in Harrison. The Harrison court reasoned that the defendant's testimony in his earlier proceeding was motivated not by the strength of the evidence against him but by the illegal introduction into evidence of three wrongfully obtained confessions. The court noted that the same principle that prohibits the use of confession, so procured, also prohibits the use of any testimony impelled thereby as the Cecil's testimony in this case was the fruit of ineffective assistance of counsel. In Harrison, the court stated that the operative question is not whether the petitioner made a knowing decision to testify but why. In this case, Cecil did not even make a fully knowing decision to testify. Cecil's attorney counseled him that he should testify in order to demonstrate his religious transformation to the court but did not advise him that the same goal could be accomplished by making a narrative statement in elocution without being subject to the state's cross examination. The circumstances in this case are therefore analogous to those in Harrison even though the procedural posture of a sentencing hearing is different. The Illinois case, People v. Duncan, is even more on point because in that case, the defendant's testimony at his first trial was induced by counsel's ineffectiveness as in Cecil's attorney did not deny that she advised him to testify and did not tell him that he could make a statement in elocution without cross examination. Cecil's pro se petition easily satisfies the low threshold established by Hodges for stating a constitutional claim at the first stage. Cecil's claims have more than an arguable basis in law. At the second stage of post conviction proceedings with the assistance of new counsel, Cecil's claims can be further developed to fully articulate his assertion of ineffective assistance related to the circumstances of his sentencing hearing. Ultimately, the remedy for Cecil should be a new sentencing hearing where the transcript of his first sentencing hearing will be suppressed and where the trial court will not consider the prejudicial cross examination. Even if this court is not persuaded that this first issue warrants a remand, Cecil respectfully requests that this court remand on the basis of his crankle claim. This claim centers on his attorney, Sacco Miller, who represented him at his second guilty plea. Cecil filed a crankle motion against her after the plea contending that she had betrayed his confidences to the prosecutor in the case whom she admitted was a friend of hers. In response, attorney Sacco Miller filed a motion to withdraw from representation conceding that she could no longer represent him effectively. Thus, pending before the court at the same time with Cecil's crankle motion and his attorney's motion to withdraw, a very unusual circumstance. At that point, the prosecutor, the one who was the personal friend of Sacco Miller, improperly participated in the proceedings by voicing his opinion that Sacco Miller could continue to represent Cecil. The court agreed with the state and denied both Cecil's crankle motion and Sacco Miller's motion to withdraw without appointing new counsel for Cecil. Sacco Miller went on to represent Cecil at his second sentencing hearing where she raised no objection to the introduction of the transcript of his first hearing, as I have just discussed. Later, she moved for reconsideration of his 45-year sentence but presented no argument or evidence to support the motion. The trial court's conduct in permitting the state to participate in a crankle hearing without appointing counsel for Cecil is reversible error. This claim, which is precisely articulated in Cecil's pro se petition, has more than an arguable basis in law and merits a remand for second-stage post-conviction proceedings. In conclusion, Cecil requests that this court remand for a new sentencing hearing or, in the alternative, remand for second-stage post-conviction proceedings with the appointment of new counsel. Thank you for your time, Your Honors. I am now available to take questions. Justice Jorgensen, do you have any questions? Yeah, you've indicated that it was unusual for both a crankle hearing and a motion to withdraw to be heard and decided simultaneously. Yes, Your Honor. Where's the error in doing that? Your Honor, the error is not in deciding the two issues simultaneously. I noted that it was an more light on Cecil's crankle claim against his attorney, that there was, in fact, an irrevocable breakdown in communication, as Attorney Sacco-Miller herself said. The error was not specifically in ruling on those two motions simultaneously. It was in allowing the prosecutor to take part in the proceedings and creating this adversarial proceeding where Cecil did not have new counsel to represent his interests. All right. Where in your client's pro se petition does he raise these issues? At first glance, it appears that they are confined to specific issues regarding his fitness, and yet you're arguing today about the sentencing hearing, the use of forfeited. He just simply didn't raise them. Well, Cecil's petition explicitly raises both ineffective assistance of trial and appellate counsel. But when you get into the specifics of those ineffective assistance claims, it seems that they become very diluted. Aren't we to consider just what he raises, the factual allegations? Well, the holding of Hodges is that pro se claims at the first stage should be liberally construed. And I think especially in light of Cecil's diminished mental capacity, his limited education and learning disabilities, I think in this case, his petition certainly deserves a liberal reading. But his petition does enumerate specific shortcomings of both trial and For example, he faults his appellate counsel for focusing only on the issue of his excessive sentence and not on claims related to trial counsel's performance. And among those claims, he describes the failure to present mitigating evidence at sentencing and the failure to raise Cecil's lack of fitness, which according to Cecil, resulted in his self-incrimination at sentencing. So I think that the core of the issue is raised in his petition. I think he was limited by his education and perhaps capacity issues in fully fleshing out the claim. But, you know, certainly there is an arguable basis. There's more than a gist. And the claim could be further developed by counsel at a second stage. In addition, the second issue, though, is specifically raised in his petition. And he does contend in his petition that the court claims should have been raised on direct appeal. Okay. When we are obliged to give a liberal construction or a liberal reading of a petition, is that limited to the pleadings alone? Or should we consider and is there any authority for us to consider the capacity of the defendant, other than that he's just pro se? Well, I, you know, I think that the capacity, I think the reason for giving the liberal reading is because pro se litigants are limited in their ability to articulate the precise legal argument or legal standard. And I think, you know, in this case, his mental capacity is simply further evidence of his limitations. But, you know, again, I do think that there is more than a gist of a claim in this petition. And certainly there is explicit counsel. My question is, I agree with you. I mean, you know, that's the gist is a different issue. My question specifically is, whether there is any authority by which we consider can consider his a lifelong history of mental illness and drug abuse as part of a liberal construction of his pleadings? Yes or no? Well, Your Honor, I'm not aware of any authority at the top of my head. But I mean, the issue he raises is not directly related to his capacity. But I think, you know, it's all part of what happened at his sentencing hearing. Okay, that's all the questions I have. Thank you. Thank you, Your Honor. Justice Hudson, do you have any questions? Actually, I was going to ask questions regarding the forfeiture issue along the lines of Justice Jorgensen. But I think they've been adequately addressed. So I have no further questions. Thank you. Thank you, Your Honor. I guess my concern is I read the petition. And it's all about fitness, fitness, fitness, fitness. I'm just not fit. And I have these issues. But yet you are arguing that be, I guess what you're saying is because of that fitness issue, you are now able to argue the specifics that he does not. How does that work? Well, Your Honor, I'm not raising the claim because he's contended that he has fitness issues. I mean, he has raised ineffective assistance of both trial and appellate counsel. And so, you know, the first level is, what could appellate counsel have raised on direct appeal from his resentencing? And appellate counsel could have reviewed the transcript of the sentencing hearing and raised the issue of the impropriety of trial counsel, you know, not objecting to the introduction of this transcript. And in addition, the crankle issue was evidence on the face of that, of the transcript from the second sentencing, or the, I'm sorry, the proceedings leading to the second sentencing hearing as well. So those issues would have been, you know, should have been readily apparent to appellate counsel and could have been raised at that juncture on appeal from the previous sentence. But are you putting us in a position as a reviewing court to actually look at things that were not raised before the trial court with some specificity? The trial court looked at a different, reading them, I think the trial court's looking at a different argument and a different substance than you're asking us to look at. How do we reconcile that? Well, I mean, you know, certainly this court is in a position to engage in de novo review. And, you know, I think the petition does articulate these claims regarding ineffective assistance of counsel. You know, whether or not the trial court fully considered all of the claims in the petition doesn't limit this court's review in any way. The trial court writes a rather specific order about what she considered, didn't she? Yes. Yes, Your Honor. Yes. And... All right. I have no other questions. Okay. Thank you, Your Honor. All right. And Mr. Jacobs, if you are ready, you may proceed. Yes. Thank you. May it please the court and counsel, I'm Barry Jacobs on behalf of the people of the state of Illinois, as I believe in this case. As I argued in my brief, the petitioner's argument is that appellate counsel provided ineffective assistance by failing to challenge the admission of the transcript of his first sentencing hearing at the second sentencing hearing and by failing to argue that the trial court improperly denied his tranquil motion were forfeited by him by failing to raise them in his pro se post-conviction petition. Contrary to what counsel has just stated, he did make claims of both ineffective assistance of trial counsel and appellate counsel. However, he alleged no facts to support either of those claims. His claims, if that is the standard, then any claim of appellate counsel or ineffective assistance of appellate counsel would be ripe. In addition to that, both of these claims are based on meritless legal theories. Therefore, they don't rise to the order dismissing the post-conviction petition as patent without merit was correct. The petitioner chose to testify at the original sentencing hearing in furtherance of a request for leniency and to show that he'd undergone a religious conversion. He was no longer able to engage in criminal behavior. While the petitioner could have exercised his right to remain silent and could have refused to answer the state's questions on cross-exam, the record does not indicate that he did so. In fact, the record refutes petitioner's claim that his constitutional rights were violated when he chose to testify at this first sentencing hearing. The record is robust from the motion to vacate his plea. The petitioner testified that he was aware that he wasn't required to testify, but he chose to do so. His claim that he was unaware that he could have just simply made a statement in allocution is refuted by the testimony of his first plea counsel, Jan Boutron, who went into great detail about her conversations with him. She stated in that hearing that she discussed allocution with the defendant and that he wanted to both testify and offer allocution, but after his disastrous performance on cross-examination, after testifying, she advised him not to allocute as a strategic decision. Because the petitioner suffered no constitutional infringement when he chose to testify, he cannot demonstrate the trial counsel's failure to object to the admission of the transcript of the original sentencing hearing at his second sentencing hearing that fell below an objective standard of reasonable evidence that constituted deficient performance or that had counsel objected to the admission of the transcript, there was a reasonable probability the transcripts would not have been admitted. There was simply no basis for counsel to object, although she did. I also need to point out that Jan Boutron, petitioner's first counsel, was never found to be ineffective. Rather, the court granted his motion to vacate the plea after finding that he had not been properly admonished about whether or not truth in the sentencing applied. This case is unlike Duncan. There was no indication and no finding that petitioner's testimony at the first sentencing hearing was made without the advice of counsel or induced by a violation of his Sixth Amendment right to counsel. Again, because petitioner cannot show that his Fifth or Sixth Amendment rights were violated at the original sentencing hearing, sentencing counsel's purported failure to object to the admission of the transcript of the original sentencing hearing at the second sentencing hearing on that basis did not constitute deficient performance. Further, petitioner does not demonstrate that had counsel objected to the admission of the transcript based on the purported infringement of his constitutional rights, there was a reasonable probability that the court would not have admitted the transcript, and that in the absence of the transcript, the court's sentencing decision, which was based primarily on his criminal history, would have been anything different, that the court would have imposed, in fact, a lesser sentence. On the first issue, in summary, petitioner has not overcome the record and has not demonstrated that his testimony at the first sentencing hearing was compelled by an infringement of his right against self-incrimination or by an infringement of his right to counsel. He further fails to show that the admission of the sentencing transcript at the second sentencing hearing was erroneous and that second plea counsel provided ineffective assistance by failing to object. Petitioner does not establish that an error of hearing and that counsel provided ineffective assistance by not objecting to the admission of the transcript at the second sentencing hearing. Petitioner's claim that appellate counsel was ineffective for failing to raise these issues on direct appeal is based on a meritless legal theory. As such, this claim does not state an arguable basis for relief. Turning to the second issue, the post-conviction petition did not state an arguable claim that appellate counsel provided ineffective assistance by failing to challenge the denial of petitioner's crinkle motion. Petitioner argues that the record establishes that the court conducted an inappropriate adversarial hearing on his crinkle motion by allowing the state to participate. As argued in the brief, petitioner should be precluded from raising this issue because he did not allege facts to support it in the pro se post-conviction petition. On the merits of this claim, appellate counsel was not obligated to brief every conceivable issue on appeal. The record here firmly demonstrates that the court conducted a proper crinkle inquiry and did not err by denying petitioner's motion for appointment of new counsel. Because the issue did not have merit, petitioner cannot show that he was prejudiced. The record here refutes his claim that the trial court improperly allowed the state to participate during the preliminary inquiry into his present claims of ineffective assistance of counsel. As argued in the brief, following the entry of his second plea of guilty but prior to sentencing, petitioner filed a motion for crinkle hearing alleging that his counsel, Anna Sacco-Miller, who had successfully moved to vacate his prior guilty plea and who had represented him during the second plea negotiations, breached his confidence by telling the prosecutor the petitioner was concerned that he could not get a reasonable plea or fair trial because I felt assistant state's attorney Peter Bue hates me. In the motion for new counsel, petitioner also asserted that counsel had not filed two unspecified motions that petitioner requested her to file. Defense counsel then moved for leave to withdraw alleging the breakdown as evidenced by the crinkle filing. At a joint hearing on petitioner's crinkle motion and counsel's motion seeking leave to withdraw, the court proceeded first at the counsel's request on her motion to for leave to withdraw. And in response to counsel's argument that she felt unable to provide effective representation due to the crinkle filing, prosecutor objected to the motion for leave to withdraw stating that he believed counsel could continue to effectively represent the petitioner. The prosecutor did not respond further and didn't speak again until after the court denied both motions. This clearly was a first the motion for leave to withdraw and second petitioner's claims of ineffective assistance of counsel without the input of any of the state or anyone. So the court then went on to question petitioner regarding his concerns about counsel's representation and probably reflected upon the court's observations of counsel's performance noted that counsel had successfully moved to commented upon the insufficiency of petitioner's complaint that counsel had been unresponsive to his request to schedule sentencing. The record shows that the court explored petitioner's contentions in a non-adversarial setting. The fact that there was a joint hearing or the hearing was related in time should not inure to the benefit of the petitioner. There were separate inquiries without the input of the state and the court properly decided in an objective and neutral fashion that the petitioner wasn't entitled to new counsel. Therefore appellate counsel's failure to raise this meritless issue did not arguably demonstrate deficient performance and that but for appellate counsel's failure to raise this issue the direct appeal would have been granted. Based on the brief and the argument here this court should find that the petitioner failed to present an arguable claim of ineffective assistance of appellate counsel. Thank you. Justice Jorgensen do you have any questions? Yeah you have indicated that in the motion to vacate the original plea that there was no finding that counsel was ineffective. Correct that's your position? Yes. Okay but the trial court really didn't find that she was effective at either. It simply looked to the fact that this same attorney failed to tell her client how much of the time he would be served and overlooked the idea that the extra 15 years was not available. Correct all the parties were under the mistaken belief that the 15-year add-on applied. Right. If the state and the defendant are both ineffective that doesn't negate the ineffectiveness does it? It would not but my point is that there was no finding as as appellant often references in a brief that this counsel was was ineffective. There's the reason the plea was withdrawn was not due to counsel's ineffectiveness or there was no discussion about what what the court believed whether she talked about allocution didn't talk about allocution but her testimony was clear she did. Counsel the court found that that no one told the defendant whether he would be serving 75 or 85 percent of a sentence. Yes the plea was not intelligently made I'm sorry. Correct isn't that ineffective assistance at a plea? Yes. Are you thinking it as I said every all the parties were under the misapprehension the record does talk her Jan Boutron the counsel at that time talks about what her understanding of the law was what she conveyed to defendant and he had agreed to according to her to plea guilty to 75 or 85 percent at the very worst worst case scenario in exchange for that that plea to one count. Let me just get this straight your position is that counsel is effective leading your client to one count regardless of how much of this sentence he's going to serve? No I'm I'm not saying that that's not what I'm saying I'm just saying that she was clear that she did speak to him uh and he fully understood uh what counsel but the point is that's all counsel's testimony upon which the court made no findings it simply found that this man should be able to withdraw his plea because nobody told him how much of the sentence he was going to be serving. Isn't that what the court decided? Yes and he was granted relief on that basis. Yes okay and you've indicated that there that the defendant's theory here is a meritless legal theory can you expound on that please? Why is it meritless? It is meritless because the plea was not withdrawn based on counsel's ineffectiveness. She hasn't or he has not shown that there there was evidence of this perhaps but he has not shown that there was a merit of theory that had merit that counsel was ineffective. As I said the court considered only that counsel and the court had told defendant that he could serve up to 85 percent 75 up to 85 percent and that a 15-year add-on applied to the whether or not the plea was intelligent. Counsel was there any finding by the court on any of those other issues? I'm sorry what other issues? All the other issues that were raised at the time? No my recollection is no it was only upon the on the 75 to 85 percent the the truth in sentencing. So those other issues remain unresolved correct? Yes. Okay and on the appellate counsel failing to address the crankle issue why is that not ineffective assistance of appellate counsel? Because there was a non-adversarial inquiry made by the court that it occurred during in conjunction with another hearing didn't lessen the fact that the state was not participating after its initial statement the state I think speaks almost first and says it opposes the motion to withdraw. After that the state doesn't speak again and the court goes on to conduct a proper crankle inquiry and ask the defendant so what are your allegations of ineffective assistance of counsel? Yes it's taken a while to set you know to get the sentencing scheduled it wasn't due to anyone's schedule. So the court comments about on what he knows of counsel's performance. Counsel had after all moved successfully to have the first plea vacated. So it's the state's position that there is no no claim to be had that that the the inquiry was improper. In this crankle petition doesn't the defendant also raise his claim that his defense attorney had betrayed his trust to the state's attorney? His trust in only in so far as he stated that he believed that Mr. Bew hated him and had because he had never spoken to him and then he had spoken into him one day. And that there's no specific allegation that she had betrayed his trust that would affect his he doesn't make any allegation that he wouldn't that Mr. Bew could not participate in his sentencing. I mean there's there's nothing alleging that other than counsel disliked disliked him. And this is the same assistant state's attorney that offers uh his comment that counsel defense counsel should remain in the case. Is that right? That's right. Okay I have nothing else. Justice Jorgensen did you say something at the end of that question? I said I had nothing else no other questions I'm sorry. I don't think we have the best connection this time. I know but Mr. Kaplan believes we do. All right Mr. or Mr. Justice do you have anything you'd like to ask? Based on the questions that were just asked and the answers just given I do not have anything further at this time. Thank you. All right I'll I'll ask a question or two. Okay. On my minimal microphone. I am looking at uh Justice Ackert or Justice now she's a judge. Judge Ackert's disposition of this and and it is clearly much different than many of the post-conviction petition decisions that we receive. And she but she what she does that's helpful to this court I believe is set out exactly what the defendant is concerned about. And he's concerned about his fitness to do anything in this court and secondly his continued requests to for new counsel. Isn't that what the issues are raised in the actual PCP before us? That's my recollection without any specific facts to uh to support either of the claims made in by appellant. And the only time that I could find a mention of the prior transcript which is really the the foundation of this I believe appellate proceedings is when she says that she had access she was aware of his fitness and she had access to three fitness evaluations. The transcript from the prior hearing sentencing hearing the pre-sentence investigation his own statements regarding his mental health and the Illinois Department of Corrections record subpoenaed by trial counsel and provided to the preparer of the pre-sentence investigation. She doesn't expound on the transcript she says that she was aware of it as it relates to his that the issues within that transcript when he did not raise them in his petition. Uh that's that's my my point these uh that issue has been forfeited for all these issues this underlying claim of a fifth amendment violation of a these simply weren't raised there are no facts to support anything other than claims about his fitness or ineffective assistance appellate counsel or trial counsel based upon failure to provide anything beyond what Judge Ackert notes. There's nothing in the position that I could find. And the only attorney that we are concerned with in this PCP is Sacco Miller correct? Well an appellate counsel yes. Well I'm sorry an appellate counsel yes but the trial judge or the trial attorney is not Boutron that we're concerned with it's Sacco Miller and what if anything her relationship was with the the um the process. As I said uh relief had been granted whether or not in her uh right presentation or representations to this defendant relief was granted he was allowed to withdraw his first guilty plea. All right I uh don't have any additional questions to either of my colleagues based upon those uh questions I asked. I do not. Thank you. Thank you. All right uh Ms. Cook if you wish to reply you may do so at this time. Thank you your honor I just wanted to um raise one uh question or I'm sorry one comment to address uh counsel's um comment that uh Cecil um Cecil's testimony that he uh about about knowing his right of allocution I think I believe counsel stated that um Cecil's testimony was rebutted by his attorney Boutron at the um motion to withdraw the guilty plea and I just wanted to clarify so Cecil testified at that hearing that attorney Boutron never told him that he could simply make a statement in allocution rather than being called to testify and subjected to the state's cross-examination. Cecil explained at that hearing he knew that he had the option not to testify but that his attorney did not advise him that he could make a statement in allocution instead of testifying and being subject to cross-examination and attorney Boutron did not dispute that um I had concluded she they discussed whether he could make a statement in allocution at that time but she did not advise him prior to his testimony that he could simply um forego a cross-examination by making a statement in allocution and in addition she did not advise him that he could answer cross-examination questions with a simple yes or no rather than the extended narrative that he gave. That was the the only point that I wanted to raise your honors unless you have additional questions. Thank you. Justice Jorgensen anything you'd like to ask? Uh no based on that I have no questions. And rather than hey you Justice Hudson do you have anything? Notwithstanding that I have no further questions. All right and I don't have any questions either that have not already been answered so thank you counsel very much for your take the matter under advisement. We will issue a decision in due course and at this time we will stand adjourned as our oral arguments for July 20th 2020 have been completed. Thank you. Thank you.